CHARLES E. MONCY vs. PLANNING BOARD OF SCITUATE.

No. 99-P-62.

Suffolk. October 13, 2000. - January 19, 2001.

Present: PERRETTA, GILLERMAN, & PORADA, JJ.

*Way,* Public: subdivision control, establishment, what constitutes. *Statute,* Construction.

A judge of the Land Court correctly concluded that a lane laid out as a "highway" by the selectmen of the town of Scituate in 1725 was not a public way for purposes of frontage requirements in a proposed subdivision, where no evidence was produced as to why the "highway" was laid out, or whether the town retained any ownership of the land comprising the way [716-717]; where the acceptance of the way by the town in 1726 was applicable to both public and private ways [717-718]; where the appearance of the way on an 1831 map did not prove the public nature of the way [718]; and where the term "highway" used in the 1725 layout did not of itself denote a public way [718].

A Land Court judge did not err in not finding an expert witness qualified to render an opinion on the legal status of a way. [718-719]

A Land Court judge properly could conclude as matter of law that the 1725 layout of a "highway" constituted a private way, now known as a statutory private way, under Province Laws 1693-1694, c. 6, § 4, and 1713-1714, c. 8, § 1, and Rev. St. c. 1836, §§ 66-69. [719-720]

CIVIL ACTION commenced in the Land Court Department on February 9, 1995.

The case was heard by *Leon J. Lombardi,* J.

*Edward T. Angley* for the plaintiff.

*Judith C. Cutler* for the defendant.

PORADA, J. The sole issue in this case is whether Bates Lane, laid out by the selectmen of the town of Scituate in 1725 as a "highway," is a public way under the Subdivision Control Law. If so, then a plan of land depicting a lot with the required frontage under the Scituate zoning law submitted by the plaintiff to the planning board (board) was entitled to be endorsed "approval under the subdivision control law not required." The

board had denied the endorsement based on lack of substantive proof that Bates Lane is a public way as that term is used in G. L. c. 41, § 81L. The plaintiff appealed the board's decision to the Land Court. A judge of the Land Court affirmed the board's decision on the ground that the plaintiff had failed to sustain his burden of proof that Bates Lane is a public way. We affirm.

A way is not public unless it has become such in one of three ways: "(1) a laying out by public authority in the manner prescribed by statute . . . ; (2) prescription; and (3) prior to 1846, a dedication by the owner to public use . . . coupled with . . . acceptance by the public."[1] (Citations omitted.) *Fenn* v. *Middleborough*, 7 Mass. App. Ct. 80, 83-84 (1979). *Rivers* v. *Warwick*, 37 Mass. App. Ct. 593, 594-595 (1994). The plaintiff bore the burden of proving that Bates Lane is a public way. *Id.* at 594. The plaintiff claims that he sustained his burden of proof by producing evidence that Bates Lane was laid out as a "highway" in 1725 by the selectmen of Scituate; the town voted to accept the layout in 1726; Bates Lane was shown on an 1831 map as a highway in Scituate; all town highways in colonial Scituate were public ways; and all ways laid out by the selectmen prior to 1836 were public ways. We discuss each type of evidence on which the plaintiff's claim rests.

1. *The layout.* The Land Court judge found that the selectmen did lay out Bates Lane as a "highway" in 1725. However, he found that this evidence was inconclusive as to the status of the way, because no evidence was produced as to why it was laid out. See *United States* v. *125.07 Acres of Land, More or Less*, 707 F.2d 11, 14 (1st Cir. 1983) ("The ancient [Massachusetts] statutes make clear that whether a road is public or private for upkeep purposes depends, not just upon *whether* it was laid out, but upon *why* it was laid out" [emphasis in original]). Adopting the rationale of Justice Breyer in *United States* v. *125.07 Acres of Land, More or Less*, 707 F.2d at 14, the judge reasoned that the why of it could best be determined by who paid for it. Finding no conclusive evidence that the town paid anyone damages for the layout of this way, the judge concluded that it was just as probable that the 1725 layout was intended as a private way for the benefit of Israel Whitcomb at whose house lot one of the

[1]There is no evidence of prescription or dedication in this case.

forks in the way ended.[2]

On appeal, the plaintiff does not press his trial argument that the town paid damages to land owners for the layout of Bates Lane. The judge had rejected this argument. Instead, the plaintiff relies upon the testimony from an expert witness that towns in colonial times often retained ownership of strips of land for ways in laying out lots in their respective towns, which eliminated the necessity of land damages. Other than offering an expert opinion that this was so, which the judge was entitled not to credit, the plaintiff produced no other evidence that the town had retained ownership of the land that comprised Bates Lane. In the absence of this evidence or any other evidence that the town expended monies for the construction or maintenance of Bates Lane,[3] the judge's finding was not clearly erroneous.

In any event, the lack of any evidence of payment of compensation for the layout of Bates Lane was not the only evidence on which the judge relied for his finding that the layout of Bates Lane in 1725 was inconclusive in establishing whether Bates Lane was a public way. This finding was buttressed by evidence that the town voted in 1858 to appoint a person to ascertain if Cowen Lane, otherwise known as Bates Lane, belonged to the town.[4] Further, there was evidence that, in the 1800's, the town assessed fees for the rental and use of Bates Lane, which on its face would appear to be inconsistent with its use as a public way. *Cohasset* v. *Moors,* 204 Mass. 173, 176-177 (1910). Resolution of the conflicting evidence was for the judge and we do not disturb his determination unless clearly erroneous. *Martin* v. *Building Inspector of Freetown,* 38 Mass. App. Ct. 509, 512 (1995).

2. *The acceptance of the way.* The judge found that the town in 1726 did accept the 1725 layout. However, the notation on the town records introduced in evidence was that it had been

---

[2]Although there was evidence that another fork of the layout ended at a watering place, the nature of which was unclear, there was no evidence that there were any other houses or house lots on Bates Lane in the 1725 layout.

[3]The judge found Bates Lane is a hard-packed dirt road with gravel in some locations. He found that the traveled portion of the road varied from thirty feet in width to six feet in width and that one could travel the entire length of the road in a small pickup truck but not a passenger vehicle because of protruding rocks. He also found that stone walls line most of Bates Lane with occasional breaks in the walls.

[4]No evidence was presented as to the resolution of this inquiry.

"accepted . . . to be recorded," which was in accord with a 1718 town meeting vote requiring that all deeds and layouts of lots and ways be "returned to ye town at a meeting by them to be allowed before it be Recorded." This requirement was, thus, equally applicable to private lots and ways. As such, the judge could properly discount its significance in determining whether the way was private or public.

3. *The 1831 map.* The judge did find that Bates Lane as it exists today was shown as a road in Scituate on an 1831 map. However, the judge properly found that such evidence standing alone does not prove the public nature of the way. See *Fenn* v. *Middleborough*, 7 Mass. App Ct. at 87.

4. *The layout as a "highway."* The judge found that the mere fact that the selectmen in the 1725 layout stated that they "laid out a high way in Scituate" does not in and of itself denote a public way. As the judge noted, the term "highway" is susceptible of many meanings. It can refer generally to a road or way, including a county, town or private way. *Jones* v. *Andover*, 6 Pick. 58, 60 (1827). The plaintiff argues, however, that, in the context in which it was used in the 1725 layout, it is susceptible of only one meaning, a public way. As support for this premise, the plaintiff relies upon our decision in *Martin* v. *Building Inspector of Freetown*, 38 Mass. App. Ct. at 511-512, and the historical evidence presented by him in this case.

Although the town in the *Freetown* case voted to accept on March 29, 1764, "highways, lately laid out by the selectmen of Freetown on June 7, 1763," *id.* at 511, we consider that decision inapposite. In the *Freetown* case, the highway in question was laid out by the selectmen in 1763 and accepted by the town meeting in 1764, which occurred after the passage of the Laws of the Province of 1727 requiring town meeting acceptance of town ways laid out by selectmen. *Ibid.* The 1725 layout in this case preceded the enactment of that law. Of greater import, however, is the fact that the determination of whether a way is public or private is ordinarily for the trier of fact to decide on the evidence. *W.D. Cowls, Inc.* v. *Woicekoski*, 7 Mass. App. Ct. 18, 19 (1979). Because the conclusion reached in *Freetown* was dependent on the evidence presented, we see no parallel to be drawn between the result reached in that case and this case.

Similarly, the plaintiff's claim that highways in colonial Scituate were public ways rested in large measure on the testimony of his expert witness, Dr. Jeremy Bangs. However, while

recognizing Dr. Bangs as an art historian and historian special-
izing in the history of the pilgrims and Plymouth Colony,
particularly in the reading and transcription of old writings, the
judge did not find Dr. Bangs qualified to render an opinion on
the legal status of Bates Lane. "It is settled that whether a wit-
ness offered as an expert is qualified to give an opinion, rests
very largely in the discretion of the presiding judge whose deci-
sion will not be reversed unless clearly erroneous as matter of
law." *Johnson* v. *Lowell*, 240 Mass. 546, 549 (1922). We do not
consider the judge's ruling clearly erroneous based on Dr.
Bangs's qualifications. While he was well-qualified to render
transcriptions of the old records, his expertise did not extend to
the legal interpretation of those documents. Accordingly, the
judge did not err in rejecting Dr. Bangs's testimony as
conclusive.

5. *Ways prior to 1836.* The judge in this case ruled that Bates
Lane was laid out as a private way, now known as a statutory
private way. The plaintiff argues that a private way did not exist
before 1836. There was, however, no difference in the power
granted to selectmen to lay out town and private ways by the
Revised Statutes of 1836, §§ 66-69, and by the Province Laws
1693-1694, c. 6, § 4, and 1713-1714, c. 8, § 1.

At the time of the 1725 layout, the pertinent statutes were the
Province Laws for the years 1693-1694 and 1713-1714. The
Province Laws 1693-1694, c. 6, § 4, empowered selectmen to
lay out "particular and private wayes, for such town only, as
shall be thought necessary, so as no damage be done to any
particular person in his land or propriety without due recom-
pence to be made by the town, as the selectmen and the party
interested may agree, or as shall be ordered by the justices in
quarter sessions upon inquiry into the same by a jury to be
summoned for that purpose." The Province Laws 1713-1714,
c. 8, § 1, made it clear that the selectmen were granted the ad-
ditional power to lay out "particular or private ways, between
any of the inhabitants or proprietors within their respective
towns, as shall be thought necessary, . . . so as no damage be
done to any particular person, or his propriety, without due rec-
ompence to be made either by the town, if concerned, or such
of the inhabitants or proprietors who desire and reap the benefit
of the same."

The Revised Statutes of 1836, §§ 66-69, while dropping the
use of the archaic language which referred to both town and

private ways as "particular and private wayes," simply codified the existing powers of the selectmen and the existing manner of payment of compensation for the layout of town and private ways under the Laws of the Province. Section 66 empowered the selectmen to "lay out, alter or widen town ways, for the use of their respective towns, and private ways, for the use of one or more of the inhabitants thereof." Section 68 simply provided for payment of all damages "by the town, if it is a town way, but if a private way, then by the persons for whose use it shall be so laid out . . . unless the selectmen shall deem it reasonable . . . that any part of it shall be paid by the town, and the residue by the said persons." Thus, there was no difference in the types of ways that could be laid out at the time of the 1725 layout and in 1836. The first was a town way for which the town paid the damages for the layout. The second was a private way created for the benefit of a particular person or persons who were required to pay the damages for the layout unless the town agreed otherwise. In both cases, they were public in the sense that the public had a right of access. *Denham* v. *County Commissioners of Bristol*, 108 Mass. 202, 204 (1871). *Opinion of the Justices*, 313 Mass. 779, 782-783 (1943). See *United States* v. *125.07 Acres of Land, More or Less*, 707 F.2d at 13-14. However, the "statutory private way" is the descendant of the latter. See *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703, 703 n.2 (1979) ("A statutory private way is a way laid out and accepted by town officials 'for the use of one or more of the inhabitants . . . .' G. L. c. 82, §§ 21, 23"). See also *United States* v. *125.07 Acres of Land, More or Less*, 707 F.2d at 14, quoting from Province Laws 1713-1714, c. 8, § 1 ("statutory private way" is the latter day descendant of ways laid out by town officials for the benefit of the "inhabitants . . . who desire and reap the benefit of the same"). The judge, therefore, properly could conclude as matter of law that the 1725 layout of Bates Lane constituted a private way, now known as a statutory private way. *Ibid.* As such, it would not as matter of law qualify as a "public way" under the Subdivision Control Law. *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. at 706-709. The board did not err in refusing to endorse the plan "approval under the subdivision control law not required."

In sum, resolution of the conflicting evidence in this case was for the judge. *Martin* v. *Building Inspector of Freetown*, 38 Mass. App. Ct. at 512. His finding that the plaintiff failed to

sustain his burden of proof that Bates Lane is a public way as that term is used in G. L. c. 41, § 81L, is not without support in the evidence and not clearly erroneous.

*Judgment affirmed.*